UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------
JANE DOE,

                                    Plaintiff,

v.                                                    **MEMORANDUM**
                                                      **OPINION AND ORDER**
SARAH LAWRENCE COLLEGE,
CHRISTLE COLLINS JUDD, ALLEN                          19-CV-10028 (PMH)
GREEN, DANIEL TRUJILLO, PAIGE
CRANDALL and BEVERLY FOX,

                                    Defendants.
----------------------------------------------------------

PHILIP M. HALPERN, United States District Judge:

Plaintiff, a Sarah Lawrence College ("SLC") student who is identified by the pseudonym Jane Doe ("Jane" or "Plaintiff") commenced this action on October 29, 2019 against Defendants, SLC, Christle Collins Judd, Allen Green, Daniel Trujillo, Paige Crandall, and Beverly Fox (collectively "Defendants") pursuant to 20 U.S.C. § 1681, alleging clearly unreasonable response, hostile environment, and retaliation, in violation of her right to be free from sexual discrimination under Title IX of the Education Amendments of 1972 ("Title IX"). (Doc. 1, "Compl."). Plaintiff additionally asserts related state law claims of breach of contract, negligence, negligent infliction of emotional distress, and respondeat superior. *Id.* ¶¶ 308-54.

By motion dated December 20, 2019, Defendants move to dismiss Plaintiff's complaint in its entirety pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 11).

For the reasons set forth below, Defendants' motion is DENIED IN PART and GRANTED IN PART.

## BACKGROUND

The following facts are taken from the allegations of the plaintiff's Complaint. (Doc. 1). On October 6, 2017, Jane, who was a student at SLC, attended a party at a fellow student's ("Robert") apartment, located two floors above her apartment in SLC's Hill House residence hall. Compl. ¶¶ 18-19. At the party, Robert gave Jane what she believed to be a shot of vodka, after which she alleges she became severely intoxicated and suffered almost immediate memory loss. *Id.* ¶ 20. After the party, Jane, Robert and several others attended a second party at SLC Slonim residence hall. *Id.* ¶ 21. On that night, Jane alleges that she was sexually assaulted by Robert. *Id.* ¶ 18.

The next morning, Robert went to Jane's room to return her earring that he found in his room. *Id.* ¶¶ 23, 25. At that time, Robert informed Jane that he "used a condom" and asked if she was on birth control. *Id.* ¶¶ 25-26. Jane became concerned that Robert drugged her, as she had no memory of any sexual contact the prior night and was aware of his reputation for drugging female students and engaging in sexual activity with them. *Id.* ¶¶ 27-28.

On October 9, 2017, Jane went with a friend to SLC's Title IX Office and reported the sexual assault. *Id.* ¶¶ 29-30. She met with Investigator Caressa Nguyen ("Investigator Nguyen"), and the SLC Dean of Equity and Inclusion and Title IX Coordinator ("Dean Green"). *Id.* ¶ 29. The meeting proceeded in a rushed, disorganized manner and was not formally documented, with less than one page of notes being taken. *Id.* ¶ 32. Jane requested that her report be kept confidential and declined a No Contact Order in fear that Robert would retaliate against her. *Id.* ¶¶ 35, 37. At the meeting, Jane claims that she was not fully explained her rights and options; and was informed that the

matter would be investigated and possible additional measures would be taken, such as moving Robert's housing. *Id.* ¶¶ 29-37. Jane and her friend left the meeting with the belief that a formal complaint was made and SLC would investigate the sexual assault and take prompt action. *Id.* ¶¶ 38-39.

After the meeting, according to Jane, Dean Green immediately informed Robert of the allegations. *Id.* ¶ 40. Robert immediately began to call and text Jane multiple times, and apparently told SLC students that Jane was making false allegations against him. *Id.* ¶¶ 42-43. As a result, Jane began to fear ongoing retaliation, became extremely depressed and scared, and did not feel safe on campus. *Id.* ¶ 46. She isolated herself in her room and fell behind in her classes. *Id.* After being informed of Jane's allegations, Robert transferred schools allegedly with Dean Green's assistance, and without a notation being placed on his transcript. *Id.* ¶¶ 148-49, 153.

On October 9, 2017, Jane's mother, Tracy Doe ("Tracy") emailed one of Jane's professors, expressing concern that Jane had several missed assignments and unexcused absences. *Id.* ¶ 47. Tracy was assured by that Professor that she should not be worried, and that if Jane were to continue missing work, she was to speak with her weekly faculty advisor, Professor King, to discuss academic advice and available campus resources. *Id.* ¶¶ 47, 49-51.

On or about October 20, 2017, Jane's faculty advisor confronted Jane about her missed classes and assignments. *Id.* ¶ 52. Jane informed the advisor that she was struggling as she was dealing with a Title IX matter. *Id.* ¶ 53. Jane alleges that her advisor erroneously informed her that Title IX only dealt with sports, and that after conducting an

online search, he informed her that he had another student who had a similar experience at SLC. *Id.* ¶¶ 54-55.

On October 20, 2017, Jane received an email from Investigator Nguyen asking if she wanted help with utilizing Health & Wellness or a reduced course load of classes, which she was told would not reflect negatively on her grades or academic standing. *Id.* ¶ 58. Jane expressed that her initial hope was to catch up on her studies without a reduced course load. *Id.* ¶¶ 59-61. She was later informed that such an option might not exist towards the end of the semester, and that if she chose a reduced course load now she would be able to stay on track with a 4-year plan. *Id.*

On October 26, 2017, Jane met with Investigator Nguyen and SLC Dean of Students, Dan Trujillo ("Dean Trujillo"), who assured Jane not to worry about her courses and to focus on her mental health. *Id.* ¶ 62. After the meeting, Jane did not believe her academic status at SLC was in jeopardy. *Id.* ¶¶ 63-64. Approximately one week later, Jane attended an SLC counseling intake session, and scheduled a follow-up counseling appointment for November 16, 2017. *Id.* ¶¶ 65, 68.

On November 4, 2017, Tracy emailed Dean of Student Affairs, Paige Crandall ("Dean Crandall"), and SLC Associate Dean of Studies, Beverly Fox ("Dean Fox"), expressing concern that Jane had failing grades and missed assignments since October 9, 2017, the same date that she was allegedly informed by Professor Frey that such behavior would be addressed by her weekly advisor. *Id.* ¶¶ 69, 71-73.

A few days later, Dean Fox suggested to Tracy that Jane was being lazy and not participating in SLC academics, and allegedly incorrectly informed her that Jane was recently told to catch up on her school work or face suspension. *Id.* ¶¶ 74-76. Later that

day, Jane received a letter from Dean Fox, allegedly accusing her of only being a "resident" and demanding a meeting the following day. *Id.* ¶ 78.

On November 7, 2017, Jane met with Dean Fox, who informed her that despite her sexual assault, she was too far behind in her classes and would likely be suspended. *Id.* ¶¶ 80-82, 86. The next day, Dean Fox informed Jane that he spoke with her professors, who refused to allow her to continue as a student because of missed classes. *Id.* ¶¶ 87, 89. As a result, Jane was told there was no chance for her to remain a student and she had 48 hours to leave campus. *Id.* ¶¶ 88, 90.

On November 9, 2017, after speaking with Dean Fox, Tracy learned that Jane could request a medical leave. *Id.* ¶ 94. However, despite Tracy learning this for the first time and Jane allegedly never being made aware of this option previously, Tracy was informed that if the necessary paperwork was not completed within 24 hours, Jane would be automatically suspended. *Id.* ¶¶ 92-93.

The next day, Jane learned that she was required to meet with SLC Director of Counseling and Psychological Services Dina Nunziato ("Counseling Director Nunziato") that same day to complete the medical leave paperwork. *Id.* ¶ 98. After the meeting, according to Jane, Counseling Director Nunziato was shocked to learn how she had been treated and immediately contacted Dean Fox to see if there were alternative options available to Jane. *Id.* ¶¶ 99-100. However, Dean Fox indicated that it was too late and Jane must leave SLC. *Id.* ¶ 100.

On November 13, 2017, after speaking with Dean Trujillo, Jane learned that she may be allowed to stay at SLC if she apologized and explained to her professors why she had been absent the past two weeks. *Id.* ¶ 103. However, Jane claims she was not

comfortable or mentally prepared to share details of her sexual assault with her SLC course professors at such time. *Id.* ¶ 105. She was then informed that she had until 5:00 p.m. the following day to submit the medical paperwork or be suspended due to her missed two weeks of classes and lack of communication with SLC faculty. *Id.* ¶¶ 106, 108.

The next day, Jane signed and submitted the medical leave paperwork. *Id.* ¶ 110. Over the next week, Jane was allegedly contacted several times regarding her departure and informed she needed to leave campus immediately. *Id.* ¶ 111. On November 21, 2017, the Assistant Director of Resident Life, Erica Monnin, entered Jane's room, pressured her to pack faster, and informed her to leave campus by 8:00 p.m. *Id.* ¶ 112. As a result, Jane became depressed and despondent, and later that day, attempted suicide by hanging herself on the showerhead in her bathroom. *Id.* ¶¶ 114-15.

When Jane's boyfriend found her, he contacted SLC for assistance. *Id.* ¶ 116. SLC sent over a graduate student to monitor Jane until an ambulance arrived. *Id.* ¶¶ 117-19. When the ambulance arrived, Jane was transported to New York Presbyterian's Lawrence Hospital where she remained on suicide watch for several hours, before being transported to New York Presbyterian's Westchester Division, where she remained for 13 days. *Id.* ¶¶ 125-26.

On November 30, 2017, Tracy contacted President Judd regarding the status of Jane's Title IX investigation and did not receive a response until December 6, 2017, when Dean Green informed her that Jane never filed a formal complaint or sought to have any interim measures taken. *Id.* ¶¶ 131, 135. According to Jane, she was shocked to learn of Dean Green's response and informed her mother that both her and her friend who

was present at the October 9, 2017 meeting believed that she had filed a formal Title IX complaint, which SLC would investigate. *Id.* ¶¶ 136, 139.

On December 12, 2017, Dean Green allegedly informed Jane for the first time that he had not taken any action to investigate Jane's October 9, 2017 Title IX complaint because Jane failed to file a formal complaint. *Id.* ¶¶ 140-42. That same day, Jane requested that SLC consider her initial report to be a formal Title IX complaint and immediately begin investigating her sexual assault. *Id.* ¶ 144. Further, according to Jane, she also informed Dean Green that when she told her advisor, Professor King, about her sexual assault, he was completely unaware that Title IX protected victims of sexual assault. *Id.* ¶145. Also, Jane claims that Dean Green was not surprised that SLC faculty was unaware of Title IX procedures and protections. *Id.* ¶¶ 146-47. Around the same time, Jane contacted Dean Trujillo regarding receiving partial credit for the courses she was enrolled in, but was allegedly refused such partial credit. *Id.* ¶¶ 156, 159. Despite this, Jane was required to pay full tuition. *Id.* ¶ 162.

SLC's investigation into Jane's complaint began in January 2018. *Id.* ¶ 163. Jane alleges that despite the investigation revealing evidence to the contrary, the hearing panel concluded that she was not "too incapacitated to give consent" to sex. *Id.* ¶¶ 188-98, 201-5, 225, 227-31, 233-38, 252. On February 12, 2018, the investigation was completed with a First Investigation Report being provided to Jane. *Id.* ¶ 170. According to Jane, after reviewing the report, Jane's legal counsel informed Dean Crandall of two significant errors, and Jane requested that the report be amended, as several significant details were omitted. *Id.* ¶¶ 172-78. However, Dean Crandall chose not to remove the inaccuracies and instead noted Jane's request for amendments at the end of the report. *Id.* ¶ 180.

On February 28, 2018, SLC conducted a Title IX hearing. *Id.* ¶ 183. Dean Crandall was appointed to conduct the hearing, advise the hearing panel, and write the decision letter. *Id.* ¶ 185. Approximately one week later, the hearing panel issued a decision letter, finding Robert not responsible. *Id.* ¶¶ 185-86, 257. On March 12, 2018, Jane appealed the hearing panel's decision. *Id.* ¶ 260. On April 6, 2018, the case was remanded to a different hearing panel for a new hearing, as it was found by the Appeal Committee that the previous panel may have applied the wrong standard when determining whether Jane provided consent. *Id.* ¶ 266. The second hearing occurred on June 6, 2018, and again, Robert was found not responsible. *Id.* ¶ 271, 273. Jane's second appeal was rejected on July 9, 2018. *Id.* ¶¶ 276-77.

According to Jane, the U.S. Department of Education Office for Civil Rights ("OCR") previously investigated SLC's policies and procedures for handling sexual assault and harassment incidents from 2013 to 2018. *Id.* ¶¶ 278-88. Such investigation was allegedly prompted by a discrimination complaint filed by a female SLC student against SLC in 2013. *Id.* ¶ 278. Jane alleges that after a four and a half year investigation, OCR found that SLC had inadequate procedural compliance with Title IX and a resolution agreement was entered into on April 6, 2018 mandating that SLC properly implement Title IX procedures. *Id.* ¶¶ 288-89, 295, 298. According to Jane, as part of the Resolution Agreement, SLC was required to draft proposed revised grievance procedures including prompt timeframes for investigations, complaint resolutions and appeal processes. *Id.* ¶ 290. Further, SLC was allegedly required to document investigations and provide training to its staff directly involved in investigating and resolving complaints of sexual harassment. The training was intended to provide SLC additional information on

how to handle sexual assault investigations including providing interim measures, assessing a hostile environment, and implementing Title IX's prohibitions on retaliation. *Id.* ¶¶ 291-94.

Jane claims that OCR mandated that when responding to an alleged sexual harassment, SLC must conduct an immediate and appropriate investigation, and if it is revealed that discriminatory harassment has occurred, SLC must take prompt and effective steps to end the harassment. *Id.* ¶ 296. Further, according to Jane, OCR found that pursuant to SLC's 2015-2016 Policy, regardless of whether a formal complaint was filed, an investigation must be conducted, and only if the Title IX Coordinator determines no further action is necessary does it bear any relevance that a formal complaint was not filed. *Id.* ¶ 297.

Jane also claims that from September 2010 to the summer of 2011, a 50-year-old ex-convict began residing in an SLC dorm in the middle of campus, cooking steak dinners and ordering expensive delivery for the young women who lived there. *Id.* ¶¶ 299-301. Jane alleges that despite SLC being informed by several concerned parents and students, no action was taken. *Id.* ¶¶ 302-07.

## STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the pleaded [facts] allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a

'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-pleaded factual allegations [in the complaint], a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the court must "take all well-plead factual allegations as true, and all reasonable inferences are drawn and viewed in a light most favorable to the plaintiff[]." *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996). However, the presumption of truth does not extend to "legal conclusions, and threadbare recitals of the elements of the cause of action." *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. 662). A plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## **ANALYSIS**

### a. Consideration of Defendants' Exhibits

As an initial matter, Defendants attach to their Motion to Dismiss multiple exhibits and ask the Court to consider these exhibits in ruling on the matter at bar. (Doc. 13). Defendants assert these exhibits have been incorporated by reference into Plaintiff's complaint. (Doc. 12, "Defs.' Mem. of Law in Support" at 10-11). For the reasons set forth below, the Court will not consider such exhibits at this juncture.

On a motion to dismiss, "the Court is entitled to consider facts alleged in the complaint and documents attached to it or incorporated in it by reference, [as well as] documents 'integral' to the complaint and relied upon in it." *Heckman v. Town of Hempstead*, 568 F. App'x 41, 43 (2d Cir. 2014); *see Manley v. Utzinger*, No. 10-CV-

2210 (LTS)(HBP), 2011 WL 2947008, at *1 n.1 (S.D.N.Y. July 21, 2011) ("The Court may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, and documents possessed by or known to the plaintiff and upon which the plaintiff relied in bringing the suit.").

While a Court may consider a document incorporated into the complaint by reference, "[a] mere passing reference or even references, however, to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *Williams v. Time Warner Inc.*, 440 Fed. App'x 7, 9 (2d Cir. 2011) (citing *Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004)); *Cosmas v. Hassett*, 886 F.2d 8, 13 (2d Cir. 1989). Even if a document is not incorporated by reference into the complaint, the Court may still consider such document "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (quoting *Mangiafico v. Blumenthal*, 471 F.2d 391, 398 (2d Cir. 2006)). However, "[a] document is not 'integral' simply because its contents are highly relevant to a plaintiff's allegations, but only when it is clear that the plaintiff relied on the document in preparing [the] complaint." *Williams v. City of New York*, No. 14 CV-5123 (NRB), 2015 WL 4461716, at *2 (S.D.N.Y. July 21, 2015).

"[W]hen matters outside the pleadings are presented in response to a 12(b)(6) motion," a district court must either "exclude the additional material and decide the motion on the complaint alone" or "convert the motion to one for summary judgment under Fed.R.Civ.P. 56 and afford all parties the opportunity to present supporting material." *Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (quoting *Fonte v.*

*Board of Managers of Continental Towers Condominium*, 848 F.2d 24, 25 (2d Cir. 1988)); *see* Fed. R. Civ. P. 12(d).

Here, the Defendants have submitted 5 exhibits (comprised of hundreds of pages) in support of their motion to dismiss: Exhibit A: SLC's 2017-2018 Student Handbook; Exhibit B: Final Investigatory Report, relating to Jane's sexual assault allegations; Exhibits C and D: Hearing Panel's Determination Letters; and Exhibit E: several emails between SLC representatives, Plaintiff and Plaintiff's mother. (Doc. 13). Defendants contend that such exhibits are incorporated by reference in the Complaint, and/or were in Plaintiff's possession or knowledge and relied on in drafting the Complaint. Defs.' Mem. of Law in Support at 10. However, the Court disagrees. While such exhibits may be helpful at trial on the merits of Plaintiff's allegations, it cannot be said, at this juncture, that such exhibits are integral to the complaint. The Court finds that while Plaintiff makes general references to some of the exhibits Defendants offer in the complaint, Plaintiff does not rely heavily on their terms and effects. Furthermore, the Court is not prepared at this early juncture to convert a straightforward motion to dismiss into a summary judgment exercise because counsel added exhibits to the motion to dismiss. Such exhibits require the Court to weigh evidence tending to disprove or expand Plaintiff's allegations and are better served on a motion for summary judgment.

Thus, the Court will only consider the facts in the complaint when deciding Defendants' motion to dismiss and will not consider any of the voluminous exhibits attached to Defendants' motion.

b. <u>Title IX Federal Claims</u>

Title IX provides, in relevant part, "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681. Plaintiff brings three separate Title IX claims for relief (as well as state law claims, which will be dealt with seriatim).

First, Plaintiff brings a Title IX deliberate indifference claim against SLC. Title IX provides a private right of action against a federally funded education institution based on peer sexual harassment "where the funding recipient acts with deliberate indifference to known acts of harassment in its programs or activities." *Davis v. Monroe Cnty. Bd. Of Educ.*, 526 U.S. 629, 633 (1999). To allege a Title IX claim arising from harassment, a plaintiff must plausibly allege "[1] [a federally] funded recipient is [2] deliberately indifferent to sexual harassment, [3] of which they have actual knowledge, [4] that is so severe, pervasive, and objectively offensive that it can be said to deprive the [plaintiff] of access to the educational opportunities or benefits provided by the school." *Id.* at 650. A defendant acts with deliberate indifference "to acts of student-on-student harassment only where the [defendant's] response to the harassment or lack thereof is clearly unreasonable in light of the known circumstances." *Id.* at 649; *see McGrath v. Dominican Coll. Of Blauvelt, New York*, 672 F. Supp. 2d 477, 488 (S.D.N.Y. 2009) ("The standard for deliberate indifference is whether the school failed to act reasonably under the circumstances."); *see also T.P. ex rel. Patterson v. Elmsford Union Free Sch. Dist.*, No. 11 CV-5133 (VB), 2012 WL 860367, at *8 (S.D.N.Y. Feb. 27, 2012) ("a single incident of sexual assault may suffice to create liability under *Davis*"). Further, "the deliberate

indifference must, at a minimum, 'cause [students] to undergo harassment' or 'make them liable or vulnerable' to it." *Davis*, 526 U.S. at 645.

In the instant case, Plaintiff alleges that SLC violated her Title IX rights by responding with deliberate indifference to her report of sexual assault. Compl. ¶ 310-13. Further, Plaintiff alleges SLC's response was part of a pattern and practice of deliberate indifference to female students. *Id*. ¶ 314-15. Defendants concede that they were aware of the alleged assault, but seek dismissal, arguing that Plaintiff has not sufficiently alleged that SLC's conduct was clearly unreasonable, and further that Plaintiff failed to establish she was made vulnerable to harassment by SLC. Defs.' Mem. of Law in Support at 12-17. However, the Court disagrees and finds that the complaint contains allegations that, taken together, support a plausible claim for deliberate indifference.

The complaint states that when Plaintiff reported the sexual assault on October 9, 2017, the meeting proceeded in a rushed, disorganized and undocumented manner, and the plaintiff was allegedly never fully explained her rights and options. Comp. ¶ 29-30, 35, 37; *see Tubbs v. Stony Brook Univ.*, 15 CV-0517 (NSR), 2016 WL 8650463 (S.D.N.Y. Mar. 4, 2016) (finding a plausible claim for deliberate indifference existed where Plaintiff reported a sexual assault and was not explained her options). For example, when Plaintiff declined a No Contact Order because she feared retaliation, Defendants failed to explain to her that she would be protected from retaliation under SLC's policy. *Id.* ¶¶ 35-36. Furthermore, when Plaintiff requested that her report be kept confidential, SLC staff did not explain to her that such a request might hinder SLC's ability to properly investigate. *Id.* ¶ 37. Despite Plaintiff's request of confidentiality and fear of retaliation, Dean Green immediately informed Robert of the allegations. *Id.* ¶ 40.

These facts support at least an inference that such conduct was clearly unreasonable in light of the circumstances.

In response, Defendants argue that they were not deliberately indifferent to Plaintiff's complaint because an extensive investigation and disciplinary process was commenced shortly after the plaintiff filed a formal complaint on December 12, 2017. Defs.' Mem. of Law in Support at 13. Such argument rests solely on the fact that the plaintiff never filed a formal complaint on October 9, 2017. *Id.* at 12-13. However, the plaintiff was provided no information regarding a written formal complaint requirement, or provided instructions on how to do so. Compl. ¶ 143. Further, Plaintiff and her friend both left the meeting with the belief that a formal complaint was made and SLC would investigate the sexual assault and take prompt action. *Id.* ¶¶ 38-39. Thus, it can be inferred that Defendants' conduct was also clearly unreasonable in light of the circumstances.

Thus, viewing these facts in the light most favorable to the plaintiff, the complaint contains sufficient allegations that SLC acted with deliberate indifference in responding to Plaintiff's sexual assault.

Second, Plaintiff brings a Title IX hostile environment claim against SLC. "[A] Title IX hostile education environment claim is 'governed by traditional Title VII 'hostile environment' jurisprudence.'" *Papelino v. Albany Coll. of Pharm of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011) (citing *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 744 (2d Cir. 2003)). "A Title IX plaintiff must show that [1] [s]he subjectively perceived the environment to be hostile or abusive and that [2] the environment objectively was hostile or abusive, that is, that it was permeated with discriminatory intimidation, ridicule, and

insult sufficiently severe or pervasive to alter the conditions of [her] educational environment." *Id.* (citing *Hayut*, 352 F.3d at 745). "Making a 'hostility' determination in the educational context, as in the employment context, entails examining the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with' the victim's academic performance." *Hayut*, 352 F.3d at 745 (citing *Harris v. Forklift Sys.*, 510 U.S. 17, 22 (1993)). In addition, "[a] complaint under Title IX, alleging that the plaintiff was subjected to discrimination on account of sex in the imposition of university discipline, is sufficient with respect to the element of discriminatory intent, like a complaint under Title VII, if it pleads specific facts that support a *minimal plausible inference* of such discrimination." *Doe v. Columbia Univ.*, 831 F.3d 46, 56 (2d Cir. 2016) (emphasis added).

Here, Plaintiff alleges that almost immediately after reporting her sexual assault, she began to receive harassing text messages and calls from Robert. Compl. ¶¶ 42-43. Further, rumors began to spread on campus that she was making false allegations. *Id*. Despite the alleged sexual assault, she was accused by SLC faculty of being lazy and only a resident. *Id*. ¶¶ 74-76, 78. Almost immediately after submitting her medical leave paperwork, the plaintiff was rushed off campus. *Id*. ¶ 112. As a result, the plaintiff began to fear ongoing retaliation, became extremely depressed and scared, did not feel safe on campus, and ultimately attempted suicide. *Id*. ¶ 115. These facts, when taken together, plausibly support an inference that a hostile environment existed. *Campesi v. City Univ. of New York*, 15 CV-4859 (KPF), 2016 WL 4203549 at *6 (S.D.N.Y. Aug. 9, 2016) (holding that despite the harassment was not severe or frequent, the totality of the

circumstances lends itself to a jury determination, or at the very least, to reevaluation after the close of discovery, as the allegations suggested that the incident effectively altered the conditions of the plaintiff's education.)

Furthermore, Defendants allege that Plaintiff failed to demonstrate that the alleged harassment was motivated by her sex. Defs.' Mem. of Law in Support at 13. The Court disagrees. Plaintiff alleges that SLC had a history of not adequately addressing female complaints of sexual harassment. *Id*. ¶¶ 278-307. Such facts are sufficient, at this stage, to support at least a minimal plausible inference that the plaintiff was subjected to discrimination on account of sex.

Therefore, viewing these facts in the light most favorable to the plaintiff, the complaint pleads sufficient allegations that Plaintiff was subjected to a hostile environment at SLC.

Third, Plaintiff brings a Title IX retaliation claim against SLC. "[R]etaliation against individuals because they complain of sex discrimination is 'intentional conduct that violates the clear terms of [Title IX].'" *Papelino*, 633 F.3d at 91 (citing *Jackson v. Birminham Bd. of Educ.*, 544 U.S. 167 (2005)) (quoting *Davis*, 526 U.S. at 642). "[A] plaintiff claiming retaliation under Title IX must first establish a *prima facie* case by showing: (1) protected activity by the plaintiff; (2) knowledge by the defendant of the protected activity; (3) adverse school-related action; and (4) a causal connection between the protected activity and the adverse action." *Id*. at 91 (emphasis added). "Close temporal proximity between the plaintiff's protected activity and the ... adverse action may in itself [be] sufficient to establish the requisite causal connection." *Id.* (quoting *Kaytor v. Elec. Boat Corp.,* 609 F.3d 537, 552 (2d Cir. 2010)). "In a retaliation case, a

plaintiff is only required to prove that 'a retaliatory motive play[ed] a part in adverse []
actions toward [her], whether or not it was the sole cause.'" *Id.* at 92 (quoting *Terry v.
Ashcroft*, 336 F.3d 128, 140-42 (2d Cir. 2003)).

"Once a plaintiff establishes a *prima facie* case, the burden shifts to the defendant
to articulate a legitimate, nondiscriminatory reason for its actions." *Id*. "After the
defendant has done so, the burden shifts back to the plaintiff to demonstrate that the
articulated reasons are pretextual." *Id.* However, at the pleading stage, "[t]he facts
required by *Iqbal* to be alleged in the complaint need not give plausible support to the
ultimate question of whether the adverse [] action was attributable to the
discrimination…[rather, the facts need] only give plausible support to a minimal
inference of discriminatory motivation." *Littlejohn v. City of New York*, 795 F.3d 297,
311 (2d Cir. 2015).

Here, there are sufficient facts to plausibly infer that after Plaintiff reported the
sexual assault, Defendants engaged in adverse school-related action with a retaliatory
motive. The facts demonstrate that on October 9, 2017, the plaintiff reported the sexual
assault and four weeks later, was placed on medical leave and pressured off campus.
Compl. ¶¶ 29-30, 110-12. However, such decision to be placed on medical leave came
after Plaintiff was informed on several occasions that despite her reported sexual assault,
she was too far behind in school and had no other option, other than suspension. *Id.* ¶¶
80-82, 86-90, 106, 108. Such facts give rise to at least an inference that adverse school-
related action existed as a result of the plaintiff's report of sexual assault.

Therefore, viewing these facts in the light most favorable to the plaintiff, the complaint provides plausible support to at least infer that SLC retaliated against the plaintiff for reporting her sexual assault.

c. State Law Claims

In addition to plausible Title IX claims, the Court finds plausibility in Plaintiff's state law claims for breach of contract, negligence, and negligent infliction of emotional distress.

As to Plaintiff's claim for a breach of contract, to survive a motion to dismiss "a complaint need only allege (1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996) (citing *Tagare v. Nynex Network Sys. Co.*, 921 F. Supp. 1146, 1149 (S.D.N.Y. 1996)). When a university accepts a student for enrollment, an implicit contract is formed if the student complies with terms "contained in the university's bulletins, circulars and regulations made available to the student." *Papelino*, 633 F.3d at 93 (quoting *Vought v. Teachers Coll., Columbia Univ.*, 127 A.D.2d 654, 654 (2d Dept. 1987)). "Implicit in the contract is the requirement that the institution 'act in good faith in its dealing with its students.'" *Id.*

When asserting a breach of contract claim, a plaintiff must identify the specific terms of the implied contract that were allegedly violated by the college and "[g]eneral statements of policy…cannot provide the basis for a breach of contract claim." *Rolph v. Hobart and Williams Smith Colls.*, 271 F. Supp. 3d 386, 406 (W.D.N.Y. 2017).

Here, Plaintiff alleges that SLC mishandled and failed to investigate her Title IX complaint, and was not informed she was protected from retaliation or offered any

accommodations or interim measures, in accordance with SLC's Policy. Compl. ¶¶ 35-36, 82-83, 137-38. Such facts give rise to the inference that SLC breached its agreement to resolve Plaintiff's allegations of sexual misconduct in a manner consistent with the terms of the Policy. *Jane Doe v. Union College*, 1:19 CV-284 (GLS/CFH), 2020 WL 1063063, at *8 (N.D.N.Y. Mar. 5, 2020) (finding no basis to dismiss Plaintiff's breach of contract claim, where Plaintiff alleged specific allegations pertaining to how Defendants handled her investigation in contravention of Defendants policy.)

Therefore, viewing these facts in the light most favorable to the plaintiff, the complaint plausibly states a breach of contract claim.

As to Plaintiff's claim for negligence, under New York law, to state a negligence claim, a plaintiff must allege, "the existence of a duty, the breach of which may be considered the proximate cause of the damages suffered by the injured party." *Becker v. Schwartz*, 46 N.Y.2d 401, 410 (1978). "To state a claim for negligent supervision or retention under New York law, in addition to the standard elements of negligence, a plaintiff must show: (1) that the tort-feasor and the defendant were in an employee-employer relationship, *D'Amico v. Christie*, 71 N.Y.2d 76, 87 (1987); (2) that the employer 'knew or should have known of the employee's propensity for the conduct which caused the injury' prior to the injury's occurrence, *see Kenneth R. v. Roman Catholic Diocese of Brooklyn,* 229 A.D.2d 159 (2d Dept. 1997); and (3) that the tort was committed on the employer's premises or with the employer's chattels, *D'Amico,* 71 N.Y.2d at 88."

In the instant case, Defendants argue there is no negligence claim, as there is no independent legal duty owed to Plaintiff with respect to handling her sexual misconduct

claim. Defs.' Mem. of Law in Support at 22. However, while generally "a college has no legal duty to protect students from being sexually assaulted by other students…a duty may be imposed upon a college when it has encouraged its students to participate in an activity and has taken affirmative steps to supervise and control the activity." *Union College*, 2020 WL 1063063, at *7 (quoting *Faiaz*, 64 F. Supp. 3d at 361-62). Here, the plaintiff alleges sufficient facts to infer that once she reported the sexual assault and SLC led her to believe that an investigation and prompt action would occur, the relationship between SLC and Plaintiff was no longer identical to Defendants' relationship with all of its students. Compl. ¶¶ 38-39. The Court finds there is at least a plausible inference that Defendants owed Plaintiff a special duty, breached such duty by mishandling her investigation, and had knowledge of their employees' propensity for such conduct. *Id.* ¶¶ 99-100, 145-47.

Therefore, viewing these facts in the light most favorable to the plaintiff, the complaint plausibly states a negligence claim.

As to Plaintiff's negligent infliction of emotional distress claim, to survive a motion to dismiss, a plaintiff must plead "(1) extreme and outrageous conduct, (2) a causal connection between the conduct and the injury, and (3) severe emotional distress." *Simpson ex rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010). For purely emotional harm, such claim "must generally be premised upon a breach of duty owed directly to the plaintiff which either endangered the plaintiff's physical safety or caused the plaintiff fear for his or her own physical safety." *Id.* at 135 (citing *Jason v. Krey*, 875 N.Y.S.2d 194, 195 (2009)).

Here, Defendants argue that the plaintiff does not allege the existence of a special duty because her relationship with Defendants is identical to Defendants' relationship with all its students. Defs.' Mem. of Law in Support at 24. For all the reasons set forth above, the Court disagrees and finds that a plausible inference can be made that Defendants owed Plaintiff an independent duty and that such duty was breached. Finally, as a result of such breach, Plaintiff became depressed, scared, and ultimately attempted suicide, thus, demonstrating a plausible inference that she suffered emotional distress as a result of such conduct. Compl. ¶¶ 46, 114-15.

Thus, viewing these facts in the light most favorable to the plaintiff, the complaint contains sufficient allegations for a negligent infliction of emotional distress claim.

Plaintiff alleges a claim for relief under the doctrine of Respondeat Superior. The doctrine of Respondeat Superior imposes liability for damages under Title IX on "supervisory official[s] 'personally involve[d] in the challenged conduct." *Hayut*, 352 F.3d 733 at 753. Personal involvement includes direct participation by supervising officials, as well as (1) failure to take corrective action after learning of unlawful conduct, (2) creation of a policy or custom fostering the unlawful conduct, (3) gross negligence in supervising subordinates who commit unlawful acts, or (4) deliberate indifference to the rights of others by failing to act on information regarding the unlawful conduct of subordinates. *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 254 (2d Cir. 2001) (citing *Colon v. Coughlin,* 58 F.3d 865, 873 (2d Cir. 1995)).

However, there is no such claim for relief under New York's common law. *Alexander v. Westbury Union Free School Dist.* 829 F. Supp. 2d 89, 112 (E.D.N.Y. 2011) (holding "[r]espondeat superior is not an independent cause of action, but a theory that

must attach to an underlying claim…[and] to the extent that 'respondeat superior' is set forth as an independent cause of action, it is dismissed."). The Court, however, will not dismiss the applicability of the doctrine of Respondeat Superior at this juncture, but will dismiss the seventh claim for relief.

## **CONCLUSION**

Based upon the forgoing, Defendants' motion to dismiss (Doc. 11) is DENIED as to the first six claims for relief and is GRANTED as to Plaintiff's seventh claim for relief. Defendants are directed to file an answer to the complaint within 30 days of the date of this Order. Further an initial pre-trial conference is scheduled for June 3, 2020 at 10:00 a.m. by telephone. At the time of the scheduled conference, all parties shall call the following number: (888) 398-2342; access code 3456831. Counsel shall comply, as appropriate, with this Court's local rules applicable to the initial pre-trial conference.

The Clerk of the Court is instructed to terminate the motion. (Doc. 11).

**SO ORDERED:**

Dated: New York, New York
       April 10, 2020

_____
Philip M. Halpern
United States District Judge