UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------X
JANE DOE,

                      Plaintiff,                      **OPINION & ORDER**

        -against-                                     19 Civ. 10028 (PMH)(JCM)

SARAH LAWRENCE COLLEGE,
CRISTLE COLLINS JUDD, ALLEN GREEN,
DANIEL TRUJILLO, PAIGE CRANDALL,
and BEVERLY FOX,

                      Defendants.
--------------------------------------------------------X

      Plaintiff Jane Doe ("Plaintiff") now moves the Court for a protective order limiting the scope of disclosure of her mental health records pursuant to Federal Rule of Civil Procedure 26(c). (Docket Nos. 46, 47). Defendants Sarah Lawrence College, Cristle Collins Judd, Allen Green Daniel Trujillo, Paige Crandall and Beverly Fox (collectively, "Defendants") oppose the motion, arguing that regardless of whether these documents are protected by the psychotherapist-patient privilege, Plaintiff has waived the privilege by putting their subject matter at issue in the present litigation. (Docket No. 48). The documents in question have been provided to the Court for *in camera* review and consist of appointment and therapy records from (1) Plaintiff's pediatrician, Dr. Jennifer Wheeler; (2) Plaintiff's individual therapist, Dr. Alexandra Doyle; and (3) a family therapist, Licensed Professional Counselor and Supervisor ("LPCS") Jennifer Leister. (Docket Nos. 47-2, 47-3, 55). For the reasons explained herein, Plaintiff's motion is granted in part and denied in part.

**I. FACTUAL BACKGROUND**

      In August 2017, Plaintiff commenced her freshman year at Sarah Lawrence College ("SLC"). (Docket Nos. 1 ¶ 162; 49 ¶ 2; 51 ¶ 2). At a meeting on October 9, 2017, Plaintiff

informed SLC's Dean of Equity and Inclusion, Defendant Allen Green ("Green"), and Title IX Investigator, Caressa Nguyen ("Nguyen"), that she was sexually assaulted on campus by a fellow student on the evening of October 6, 2017. (Docket Nos. 1 ¶¶ 18, 29; 49 ¶ 2). In November 2017, Plaintiff took a medical leave of absence due to poor academic performance following the alleged assault. (Docket Nos. 1 ¶¶ 69-110; 49 ¶¶ 3-5). On her departure date, November 21, 2017, Plaintiff alleges that an SLC employee entered her dormitory room and "pressured her to pack faster." (Docket No. 1 ¶ 112). Plaintiff claims that this caused her to become "depressed and despondent" and she attempted suicide by hanging herself on the showerhead in her dormitory bathroom. (Docket Nos. 1 ¶¶ 112-116; 49 ¶ 5). Plaintiff further alleges that SLC "failed Jane at every turn," (Docket Nos. 1 ¶¶ 117-30; 47 at 6-7),[1] causing her "severe emotional harm," including when it improperly and discriminatorily investigated her Title IX complaint, and transferred her to the hospital, (Docket No. 1 ¶¶ 308-351).

Plaintiff filed this action on October 29, 2019, alleging, *inter alia*, violation of Title IX, 20 U.S.C. § 1681, *et seq.*, under "deliberate indifference," "hostile environment" and "retaliation" theories; breach of contract; negligence; and negligent infliction of emotional distress. (Docket Nos. 1 ¶¶ 308-51; 3-4). Plaintiff moved to proceed pseudonymously, and on October 31, 2019, the Honorable Philip M. Halpern granted the motion. (Docket No. 6).

On June 3, 2020, Judge Halpern issued a Discovery Plan and Scheduling Order ("Discovery Order") requiring production of "relevant" records from "[a]ll healthcare providers with whom plaintiff was treated or evaluated with respect to mental health, from January 1, 2012 to the present." (Docket No. 31, Appendix A at 4). On June 17, 2020, pursuant to Federal Rule of Civil Procedure 26(a), Plaintiff served initial disclosures identifying the following individuals

---

[1] All page number citations to the record refer to the ECF page number unless otherwise noted.

as people with knowledge of Plaintiff's injuries: Dr. Michael Sheikh, a psychiatrist, and Dr. Jane Toler, a psychologist, both of whom treated Plaintiff after the alleged assault. (Docket No. 49-1 at 1-2, 4). Plaintiff also indicated in her initial disclosures that she seeks compensatory damages in the amount of $75,000 for her ambulance and hospital stays from November 2017 to the present; $2,000,000 for "future mental health care;" $2,000,000 for physical and mental distress; $2,000,000 for "potential lost future wages and diminished career opportunities;" and an additional unspecified amount for emotional distress. (Docket No. 49-1 at 7).

On June 30, 2020, Plaintiff produced medical records from her hospitalization at New York Presbyterian Hospital following her November 21, 2017 suicide attempt, which revealed a history of depression and suicide attempts since the age of fifteen, and diagnosed a major depressive episode of Bipolar II disorder. (Docket Nos. 49 ¶ 10; 49-2 at Bates Nos. W318, W400). The records also indicated that Plaintiff had a "violent" relationship with her father when she was "younger," and that Dr. Sheikh had treated Plaintiff in her hometown prior to her November 2017 suicide attempt. (Docket No. 49-2 at Bates Nos. W317-18). However, Plaintiff objected to production of any mental health records relating to treatment prior to August 1, 2017, contending that such records were not covered by Judge Halpern's Discovery Order because they were not relevant and were protected by the psychotherapist-patient privilege. (Docket Nos. 49 ¶ 11; 51 ¶ 25). The parties met and conferred in an attempt to resolve the dispute, but to no avail. (Docket No. 49 ¶ 12).

After a series of pre-motion letters and two conferences, (*see* Docket Nos. 34-40), on October 1, 2020, Judge Halpern ordered production of "unredacted copies" of "all" records from Dr. Sheikh and Dr. Toler, including those predating August 1, 2017, (Docket No. 41). Judge Halpern also referred this case to the undersigned for General Pre-Trial supervision, including

non-dispositive motions and discovery of records from the six other providers that had treated Plaintiff before August 1, 2017: Dr. Wheeler, Dr. Doyle, Dr. Otis, Dr. Threats and Dr. McClung, as well as LPCS Leister. (Docket Nos. 41-42; 49 ¶ 23-24; 51 ¶¶ 32-34).

At oral argument regarding the present motion, Defendants argued that although Plaintiff had submitted for the Court's review records from Dr. Wheeler and Dr. Doyle, and indicated that the records from Dr. Otis, Dr. McClung and Dr. Threats had been destroyed, Plaintiff had improperly withheld still-existing records from LPCS Leister and misrepresented the grounds for doing so. (Docket No. 52; *see also* Docket Nos. 47-2, 47-3, 51 ¶ 35).  Specifically, Plaintiff maintained that LPCS Leister refused to release her records to Plaintiff's counsel on Health Insurance Portability and Accountability Act of 1996 ("HIPAA") grounds, (Docket No. 51 ¶ 35), and submitted an attorney declaration memorializing that, but the sealed letter from LPCS Leister regarding the contested record simply stated that LPCS Leister had not "treat[ed] [Plaintiff] for suicide ideations or any suicide attempts," (Docket No. 47-3).  The Court, therefore, ordered Plaintiff to request the subject records from LPCS Leister for *in camera* review, along with the rest of the records being withheld. (Docket No. 52).  On November 23, 2020, Plaintiff advised the Court that LPCS Leister would not produce her records without a court-ordered subpoena due to privacy concerns of others involved in the counseling sessions. (Docket Nos. 53, 53-1, 53-2).  After issuance of a Rule 45 subpoena, (Docket No. 58), LPCS Leister provided the records to the Court directly for *in camera* review.

## II.  LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides, in relevant part, that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the

action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Moreover, "[a] party or any person from whom discovery is sought may move for a protective order," which may be issued upon a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense including . . . forbidding the disclosure or discovery." Fed. R. Civ. P. 26(c)(1). "[T]he party seeking a protective order has the burden of showing that good cause exists for issuance of that order." *Gambale v. Deutsche Bank AG*, 377 F.3d 133, 142 (2d Cir. 2004). The Court has broad discretion "to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

The Court also has "broad discretion" in determining relevance for discovery purposes. *Michael Kors, L.L.C. v. Su Yan Ye*, No. 18-CV-2684 (KHP), 2019 WL 1517552, at *2 (S.D.N.Y. Apr. 8, 2019). Under the Federal Rules of Civil Procedure, relevance must be "'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *State Farm Mut. Auto. Ins. Co. v. Fayda*, No. 14 Civ. 9792 (WHP) (JCF), 2015 WL 7871037, at *2 (S.D.N.Y. Dec. 3, 2015), *aff'd*, 2016 WL 4530890 (S.D.N.Y. Mar. 24, 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)); *see also Michael Kors*, 2019 WL 1517552, at *2.

Furthermore, where, as here, there is federal question jurisdiction and the evidence sought is relevant to both the federal and state claims, "courts consistently have held that the asserted privileges are governed by the principles of federal law." *von Bulow by Auersperg v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987), *cert. denied sub. nom., Reynolds v. von Bulow by*

*Auersperg*, 481 U.S. 1015 (1987); *PPM America, Inc. v. Marriott Corp.*, 152 F.R.D. 32, 34 (S.D.N.Y. 1993).

## III. DISCUSSION

### A. Psychotherapist-Patient Privilege

In *Jaffee v. Redmond*, the Supreme Court held that "confidential communications" between a licensed psychotherapist, psychiatrist or social worker "and her patients in the course of diagnosis or treatment are protected from compelled disclosure under Rule 501 of the Federal Rules of Evidence." 518 U.S. 1, 15-16 (1996). The privilege is "'rooted in the imperative need for confidence and trust' . . . [because in] [e]ffective psychotherapy … the patient [must be] willing to make a frank and complete disclosure of facts, emotions, memories, and fears . . . [and] the mere possibility of disclosure may impede development of the confidential relationship necessary for successful treatment." *Id.* at 10.

Courts within this District have found that in addition to the above categories, communications with licensed mental health counselors "arguably fall within the privilege" as well. *Alden v. Time Warner, Inc.*, No. 94 Civ. 6109 (JFK), 1995 WL 679238, at *2 n.2 (S.D.N.Y. Nov. 14, 1995); *see also Tavares v. Lawrence & Mem'l Hosp.*, No. 3:11-CV-770 (CSH), 2012 WL 4321961, at *6 (D. Conn. Sept. 20, 2012). Conversely, the privilege does not extend to communications with medical, non-mental health providers, under the rationale that "[t]reatment by a physician for physical ailments can often proceed successfully on the basis of a physical examination, objective information supplied by the patient, and the results of diagnostic tests," *i.e.*, without the need for frank disclosure and trust triggered in psychotherapy. *See E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 119 (W.D.N.Y. 2009) (quoting *Jaffee*, 518 U.S. at 10); *United States v. Witt*, 542 F. Supp. 696, 698-99 (S.D.N.Y.), *aff'd*, 697 F.2d 301 (2d Cir. 1982).

Although privileged documents can be protected from compelled disclosure, the patient can waive the psychotherapist-patient privilege. *Jaffee*, 518 U.S. at 15 n.14. Here, it is undisputed that the psychotherapist-patient privilege applies to many of these documents pursuant to the holding in *Jaffee*. The Court will now turn to evaluate whether Plaintiff has waived that privilege.

**B. Waiver**

"[W]aiver may be implied in circumstances where it is called for in the interests of fairness," including "when the party attempts to use the privilege both as 'a shield and a sword.'" *In re Sims*, 534 F.3d 117, 132 (2d Cir. 2008) (quoting *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000)). "In other words, a party cannot partially disclose privileged communications or affirmatively rely on privileged communications to support its claim . . . and then shield the underlying communications from scrutiny by the opposing party." *In re Grand Jury Proceedings*, 219 F.3d at 182. For example, waiver occurs when a plaintiff puts his or her mental or emotional condition at issue in the case, by relying on that condition as an element of his or her claim or defense. *See Green v. St. Vincent's Med. Ctr.*, 252 F.R.D. 125, 127-28 (D. Conn. 2008); *Kerman v. City of New York*, No. 96 CIV. 7865 (LMM), 1997 WL 666261, at *3 (S.D.N.Y. Oct. 24, 1997).

The Second Circuit in *Sims*, however, soundly rejected the contention that "anybody who asks for [damages for] pain and suffering has waived the psychiatric privilege . . . [and that] a claim of 'garden variety' injury waives the psychotherapist-patient privilege." *Sims*, 534 F.3d at 130 (quoting *Jaffee*, 518 U.S. at 42); *see also Gropper v. David Ellis Real Estate, L.P.*, No. 13 Civ. 2068(ALC)(JCF), 2014 WL 642970, at *2 (S.D.N.Y. 2014); *In re Consolidated RNC Cases et al.*, No. 04 Civ. 7922., 2009 WL 130178, at *5-7 (S.D.N.Y. 2009). Consequently, to the

extent that Plaintiff's claim is for "garden variety" emotional distress she has not waived the privilege. *Gropper*, 2014 WL 642970, at *2.

"Garden variety claims refer to claims for 'compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being . . . victimized,'" *E.E.O.C.*, 256 F.R.D. at 121 (quoting *Kunstler v. City of New York*, No. 04CIV1145(RWS)(MHD), 2006 WL 2516625, at *9 (S.D.N.Y. Aug. 29, 2006), *aff'd*, 242 F.R.D. 261 (S.D.N.Y. 2007)), or "claim[s] of emotional injury for damages ordinarily associated with a conventional claim for pain and suffering," *Jacobs v. Connecticut Cmty. Tech. Colleges*, 258 F.R.D. 192, 196 (D. Conn. 2009). On the other hand, "claims for serious [emotional] distress refer to claims for 'the inducement or aggravation of a diagnosable dysfunction or equivalent injury.'" *E.E.O.C.*, 256 F.R.D. at 121 (quoting *Kunstler*, 2006 WL 2516625, at *7, 9).

Plaintiff's protestations that she is only claiming garden variety emotional distress is belied by the evidence. The record is clear that Plaintiff has asserted more than garden variety emotional distress, and therefore the Court finds that Plaintiff has waived the patient-psychotherapist privilege. *See Sims*, 534 F.3d at 141. Among Plaintiff's causes of action is a claim for negligent infliction of emotional distress, which courts have held constitutes "at issue" waiver of the psychotherapist-patient privilege. *See, e.g.*, *Karl v. Asarco, Inc.*, 166 F.3d 1200 (2d Cir. 1998) (summary order); *Malowsky v. Schmidt*, No. 3:15-CV-666, 2017 WL 5496068, at *4 (N.D.N.Y. Jan. 9, 2017). Moreover, Plaintiff seeks over $6,000,000 in compensatory damages for her hospitalization, future mental health treatment, and lost opportunities for years to come as a result of Defendants' conduct, making clear that serious and possibly permanent "emotional harm is at the heart of the litigation." *See Cuoco v. U.S. Bureau of Prisons*, No. 98 Civ. 9009(WHP), 2003 WL 1618530, at *3 (S.D.N.Y. Mar. 27, 2003); *McKenna v. Cruz*, No. 98 Civ.

1853 (HBP), 1998 WL 809533, at *1-3 (S.D.N.Y. Nov. 19, 1998).  Under such circumstances, a party's opponent has a right to conduct an inquiry into present and past communications between psychotherapist and patient. *See Green*, 252 F.R.D. at 128.  Plaintiff clearly asserts that her extensive emotional damages stem from Defendants' alleged misconduct, thus, fairness requires that Defendants be permitted to probe whether such damages were caused, in whole or in part, by prior events. *See id.*

Furthermore, Plaintiff did not assert the privilege for records she wanted to use, (Docket No. 49 at ¶¶ 10-11), and has produced records explicitly describing a "violent" relationship with her father as well as a "history of depression" and diagnosing Bipolar disorder, (Docket No. 49-2 at Bates Nos. W317-18, 400).  This diagnosis alone constitutes a claim for severe emotional distress rather than a mere garden variety claim. *Jacobs*, 258 F.R.D. at 197.  Moreover, Plaintiff cannot "partially disclose privileged communications or affirmatively rely on privileged communications to support [her] claim . . . and then shield the underlying communications from scrutiny." *See Sims*, 534 F.3d at 132 (quoting *In re Grand Jury Proceedings*, 219 F.3d at 182).

Whereas the plaintiff in *Sims* avoided waiver by expressly abandoning any claim to non-garden-variety emotional injury and agreeing not to offer privileged communications or other evidence of his psychiatric condition, that is not the case here. *See Sims*, 534 F.3d at 138; *id.* Plaintiff maintains claims for serious emotional distress and has already injected privileged communications referencing previous mental health issues into this case. *See Jacobs*, 258 F.R.D. at 197.  The Court is sensitive to the importance of protecting the psychotherapist-patient privilege.  However, it is clear that Plaintiff is selecting which records she wants to disclose.  To

allow her to do this would violate the long-standing principle that a party cannot use the privilege as both a shield and a sword.[2]

Having found that Plaintiff waived the psychotherapist-patient privilege by placing her mental health at issue, the Court now addresses whether the specific records before the Court are relevant. *See Alden*, 1995 WL 679238, at *2.

## C. Application[3]

### a. Individual Psychotherapy Records from Dr. Doyle

The majority of records submitted to the Court for *in camera* review are from Dr. Doyle, who appears to have provided Plaintiff individual therapy from late 2011 to at least December 2015 for issues related to family conflict and her parents' divorce, coping mechanisms for stress, poor academic performance, and "Attention Deficit Disorder-inattentive." (Docket No. 47-2, Bates Nos. B0156, B0169, B0193). Plaintiff asserts that as a result of Defendants' actions she suffered from depression, which led to her poor grades, "forced" medical leave, and suicide attempt, (Docket No. 1 at 9, ¶¶ 69-130, 308-51), thus, these records are highly relevant to this case. *See, e.g., Kerman*, 1997 WL 666261, at *2-3 (permitting disclosure of all mental health records where plaintiff claimed "great . . . mental and emotional damages" and had "history of psychiatric treatment" and psychotherapy was "on-going") (internal quotation marks omitted); *Alden*, 1995 WL 679238, at *2 ("Marital difficulties significant enough to prompt counseling are likely to have been an independent cause of emotional distress."). Given the similarity of

---

[2] The discoverability of the subject records does not necessarily mean that they would be admissible at trial, as their prejudicial effect may outweigh their probative value. *See* Fed. R. Evid. 403.

[3] In the subsections below, the Court parenthetically references certain page numbers of the *in camera* productions, identified by Bates Number, to provide examples of the categories of records discussed. These examples are by no means exhaustive representations of the records that Plaintiff and LPCS Leister are directed to withhold or produce. Rather, the Court references them here as examples to guide Plaintiff and LPCS Leister in their reviews when making productions in accordance with this Opinion & Order.

emotional distress reflected in these records and those alleged in the complaint, Defendants may "properly explore whether [P]laintiff's alleged distress was in truth related to [Defendants' conduct]." *See Tavares*, 2012 WL 4321961, at *10.  Therefore, to the extent that these records reflect treatment notes or other communications prepared in the course of Plaintiff's treatment and/or diagnosis, they are relevant and discoverable. *See id.*[4]

The Court is not persuaded by Plaintiff's argument that to avoid further emotional trauma, such discovery should be limited to records "relating specifically to suicide attempts prior to August 2017," or that other discovery devices should be employed before production of these records. (Docket Nos. 47 at 5, 16-18; 50 at 4-7).  This limitation would improperly interfere with Defendants' ability to fully explore their defenses since suicide attempts are not the only parallel between these records and the symptoms Plaintiff alleges she experienced as a result of Defendants' misconduct.  For example, according to these records, November 2017 was not the first time Plaintiff experienced poor academic performance or depression. (Docket No. 47-2, Bates Nos. B0161, B0177).  Therefore, it is plausible that Plaintiff's family struggles contributed to her depression and poor academic performance even after the alleged assault, especially given the fact that relevance is to be construed broadly for discovery purposes. *See State Farm Mut. Auto. Ins.*, 2015 WL 7871037, at *2; *Tavares*, 2012 WL 4321961, at *10; *Alden*, 1995 WL 679238, at *2.

Furthermore, it would not be feasible or practicable to obtain the same information through other means, nor has this information been disclosed in prior productions. *See Sabatelli v. Allied Interstate, Inc.*, No. CV 05-3205(ADS)(ARL), 2006 WL 2620385, at *1 (E.D.N.Y.

---

[4] The Court notes that there are a handful of communications between Dr. Doyle and LPCS Leister, and Dr. Doyle and Dr. Wheeler, in Dr. Doyle's file. (Docket No. 47-2, Bates Nos. B0193, B0577).  These records must also be disclosed for the reasons stated herein.

Sept. 13, 2006); *Greenberg v. Smolka*, No. 03 Civ. 8572 RWS MHD, 2006 WL 1116521, at *10-11 (S.D.N.Y. Apr. 27, 2006). Plaintiff's current therapists have limited personal knowledge of the issues revealed by these treatment records, as these therapists were not involved in Plaintiff's earlier treatment. (Docket No. 51 ¶¶ 32-34). In addition, Plaintiff herself may not recall all of the underlying facts from events five to seven years ago. Therefore, deposition testimony or written discovery responses from these individuals would not "suffice to provide an adequate picture" of the highly-sensitive information sought. *Cf. Sabatelli*, 2006 WL 2620385, at *1; *see also Rosas v. Alice's Tea Cup, LLC*, 127 F. Supp. 3d 4, 11 (S.D.N.Y. 2015). The importance of Plaintiff's mental health cannot be understated. However, these records must be provided to Defendants so that they have an opportunity to fully defend their case since this information cannot be obtained elsewhere. *See Tavares*, 2012 WL 4321961, at *10; *cf. Rosas*, 127 F. Supp. 3d at 10-11 (preventing disclosure of immigration status due to danger of intimidation and its non-relevance to the litigation); *Greenberg*, 2006 WL 1116521, at *11 (granting protective order due to privacy concerns where plaintiff had not waived the psychotherapist-patient privilege, and plaintiff's previous production sufficed to provide defendants "access to information that is both pertinent to the claims at issue and helpful . . . in defending against plaintiff's demands for relief"); Fed. R. Civ. P. 26(c). Moreover, for any documents that must be produced, all privacy interests at stake can be more fully protected with a protective order. *See Tavares*, 2012 WL 4321961, at *7–12; *Alden*, 1995 WL 679238, at *2; Docket No. 47-1. Should the parties believe there is a need to amend the current protective order, they are directed to jointly propose an amended protective order for the Court's review.

However, not all of the records from Dr. Doyle reflect privileged communications with Plaintiff. Simply because information—whether in hard-copy or sent by e-mail—is in the

possession or control of a person covered by a privilege does not make the document itself privileged. *See United States v. Clarke*, No. CRIM.3:04 CR SRU, 2005 WL 2645003, at *4 (D. Conn. July 19, 2005); *cf. S.E.C. v. Beacon Hill Asset Mgmt. LLC*, 231 F.R.D. 134, 145 (S.D.N.Y. 2004); *In re Colton*, 201 F. Supp. 13, 18 (S.D.N.Y. 1961), *aff'd sub nom. Colton v. United States*, 306 F.2d 633 (2d Cir. 1962). The psychotherapist-patient privilege only applies to (1) confidential *communications*, (2) between a licensed mental health professional *and his or her patients,* (3) in the course of diagnosis or treatment. *Doe v. Syracuse Univ.*, No. 5:19-cv-00190 (BKS/ATB), 2020 WL 5667932, at *5 (N.D.N.Y. Aug. 24, 2020). Therefore, because Dr. Doyle was treating Plaintiff individually, communications between Dr. Doyle and persons outside of this relationship, such as Plaintiff's father, or her parents' attorneys, were never covered by the privilege to begin with, and are relevant to the extent that they reference Plaintiff's mental health condition and/or potential psychological stressors affecting Plaintiff at the time of the communications. *See id.* The same is true with regard to communications between Plaintiff and non-privileged persons such as her father. *See id.*

      The Court notes that many of Dr. Doyle's records are e-mail communications with Plaintiff's mother, who relayed information regarding Plaintiff's academic performance, interactions with the rest of the family, and emotional state, presumably to assist in Plaintiff's treatment. The Court need not decide whether the psychotherapist-patient privilege covers a parent's communications to a psychotherapist for purposes of assisting in his or her minor child's treatment—an issue of first impression in this Circuit—as the Court has already determined that the privilege as applied to Plaintiff was waived, and federal courts do not recognize a parent-child privilege that perhaps otherwise would salvage the confidentiality of these communications. *See In re Erato*, 2 F.3d 11, 16 (2d Cir. 1993); *In re Kinoy*, 326 F. Supp. 400,

406 (S.D.N.Y. 1970); *see also Murray v. Bd. of Educ. of City of New York*, 199 F.R.D. 154, 155–56 (S.D.N.Y. 2001) (noting that disclosure of privileged communications "within the context of another privilege" is not a waiver). Therefore, communications from Plaintiff's mother to Dr. Doyle regarding Plaintiff's treatment and/or diagnosis are not protected by the privilege, and must be disclosed. *See Doe*, 2020 WL 5667932, at *5; *Tesser v. Bd. of Educ.*, 154 F. Supp. 2d 388, 394 (E.D.N.Y. 2001).

Nevertheless, there are also communications, including treatment notes and e-mails, reflecting that Plaintiff's mother attended individual psychotherapy sessions with Dr. Doyle. To the extent that these records reflect communications between Dr. Doyle and Plaintiff's mother in the course of her *own* treatment or diagnosis, they must not be disclosed because, as is commonly held in the corporate context, a person or entity cannot waive a privilege that he or she does not own. *See Rackwise, Inc. v. Foley Shechter Ablovatskiy, LLP*, No. 19 Civ. 11094 (AT)(SLC), 2020 WL 7342743, at *6 (S.D.N.Y. Dec. 14, 2020); *cf. Tesser*, 154 F. Supp. 2d at 394.

The Court further orders production of several other non-privileged records, including (1) payment records solely containing appointment dates; (2) public documents such as court records; and (3) retainer agreements. The privilege does not protect records that Plaintiff could not have reasonably expected would be kept confidential, such as appointment rates, dates and times reflected on invoices, or court filings. *See Doe*, 2020 WL 5667932, at *6; *Shakerdge v. Tradition Fin. Servs., Inc.*, No. 3:16-CV-01940 (VAB), 2017 WL 4694167, at *5 (D. Conn. Oct. 19, 2017). Moreover, in the attorney-client privilege context, retainer agreements containing fee and other client information are not considered privileged "in the absence of special circumstances" because "they are not the kinds of disclosures that would not have been made

-14-

absent the privilege and their disclosure does not incapacitate the attorney from rendering legal advice." *Vingelli v. United States*, 992 F.2d 449, 452 (2d Cir. 1993); *Khan v. Midland Funding LLC*, 956 F. Supp. 2d 515, 519 & n.5 (S.D.N.Y. 2013). Although the Court is not aware of any cases addressing disclosure of psychotherapy retainer agreements, the Court finds this rationale persuasive and holds that the retainer agreements here are not privileged. *See Khan*, 956 F. Supp. 2d at 519 & n.5.

b. **Family Counseling Records from LPCS Leister**

Communications involving LPCS Leister raise special concerns because she treated Plaintiff's entire family in the emotional aftermath of her parents' divorce. Indeed, LPCS Leister's records reflect notes on group therapy sessions involving Plaintiff and other members of her family—sometimes without Plaintiff present—thus implicating the privacy of persons who are not parties to this litigation. (Docket No. 51 at ¶¶ 34-35). However, in spite of these concerns, courts addressing "at issue" waiver of the psychotherapist-patient privilege have ordered production of marital and/or family counseling records, finding that they are "relevant as to the stressful events and circumstances which preceded" the improprieties alleged in the complaint, as well as "past personal history of emotional distress." *See Tavares*, 2012 WL 4321961, at *9-11; *see also Jacobs*, 258 F.R.D. at 197; *Alden*, 1995 WL 679238, at *2.

The Court does not take lightly that this conclusion infringes on the privacy of nonparties, who have "made no known express [or implicit] waiver of [their] privacy interest[s]" in these highly sensitive records. *See Tavares*, 2012 WL 4321961, at *11-12. However, "due to [P]laintiff's waiver with respect to those records and their relevance in these proceedings, it is not feasible to shield their contents from discovery." *See id.* at *12. This is especially true here because these records reflect intrafamily conflict where the relationships between individual

family members contributed to the emotional dynamics of the family overall, and therefore, arguably could have contributed to Plaintiff's mental health. *See id.* at *11-12; *Alden*, 1995 WL 679238, at *2. Moreover, documentation from Plaintiff's November 2017 hospitalization—which has already been produced—notes a "violent" relationship with her father when she was "younger," suggesting that medical personnel believed that relationship was relevant to Plaintiff's mental health at the time of her suicide attempt. *See Tavares*, 2012 WL 4321961, at *11-12; *Jacobs*, 258 F.R.D. at 196-97; Docket No. 49-2 at Bates Nos. W317-18, 400. Because Defendants must be permitted to explore this connection to test Plaintiff's legal theories, the emotional and privacy burdens here do not outweigh the necessity for disclosure of information required to do so. *See Tavares*, 2012 WL 4321961, at *11-12; *Jacobs*, 258 F.R.D. at 196-97; *cf. Greenberg*, 2006 WL 1116521, at *11.

Nevertheless, given these concerns, as well as the Court's "broad discretion to tailor discovery to the needs of the case and the interests of the discovered party," production of communications involving LPCS Leister must be limited to the "minimum" amount of disclosure "necessary to allow the [D]efendants to prepare their case properly for trial." *See Greenberg*, 2006 WL 1116521, at *10-11. Therefore, these communications need only be produced to the extent that they (1) mention Plaintiff directly, and (2) indicate that she was present at the subject therapy session. Records of sessions exclusively involving one or more other family members need not be disclosed, even if Plaintiff is mentioned, (*e.g.*, C0016),[5] as these records are more likely to reflect the mental health of nonparties and will not shed light on Plaintiff's emotional distress. *See Tavares*, 2012 WL 4321961, at *11-12; *Greenberg*, 2006 WL 1116521, at *10-11.

---

[5] For ease of reference, the Court has Bates-stamped LPCS Leister's records and will send the Bates-stamped copies directly to her counsel to assist in their production.

If this case proceeds to trial, the parties may move to redact or exclude these documents in accordance with Federal Rule of Evidence 403. *See* Fed. R. Evid. 403.

The remainder of LPCS Leister's records contain billing information, release forms and retainer agreements. For the reasons explained above, these records are not privileged, and must be produced to the extent that they are relevant to Plaintiff's mental health condition.

**c. Medical Records from Dr. Wheeler**

The records from Dr. Wheeler, Plaintiff's pediatrician, largely reflect treatment for Plaintiff's physical health. Records of medical examinations for physical ailments are not protected by the psychotherapist-patient privilege, nor are they protected by any doctor-patient privilege since that does not exist at federal common law. *See Suggs v. Capital Cities/ABC, Inc.*, No. 86 CIV 2774(JMW), 1989 WL 1143930, at *1 (S.D.N.Y. Dec. 11, 1989); *see also Jaffee*, 518 U.S. at 10. Nevertheless, the majority of these records are not relevant, as Plaintiff has not put any physical ailments at issue in this case, nor has she alleged that her emotional trauma caused physical injury. *See Alden*, 1995 WL 679238, at *2. For example, records of her childhood illnesses and vaccinations have nothing to do with Plaintiff's allegations and should be withheld. *See id.*; *see, e.g.*, Docket No. 47-2, Bates Nos. B0002, B0012.

However, to the extent that Dr. Wheeler's records mention Plaintiff's mental health status or treatment, including diagnoses, therapy with Dr. Doyle, and psychiatric medications, these records must be disclosed. (Docket No. 47-2, Bates Nos. B0003, B0009-0010). Such records do not fall within the psychotherapist-patient privilege, as Dr. Wheeler was a pediatrician without a license in psychotherapy or mental health expertise. *See E.E.O.C.*, 256 F.R.D. at 119-20; *Bruno v. CSX Transp., Inc.*, 262 F.R.D. 131, 133 (N.D.N.Y. 2009). Moreover, even if the privilege applied it has been waived here. *See E.E.O.C.*, 256 F.R.D. at 119-120. Therefore, any records in

this category must be produced because they are relevant to Plaintiff's alleged emotional distress. *See id.*

### d. Records That No Longer Exist

Finally, the Court notes that whereas Dr. Clung and Dr. Threats also provided mental health treatment to Plaintiff prior to August 1, 2017, Plaintiff has represented that records of this treatment have been destroyed. (Docket No. 51 ¶ 35). Given the potential relevance of these documents, Plaintiff is directed to provide Defendants with sworn certifications from these providers stating that these records no longer exist and when the records were destroyed.

## IV. CONCLUSION

In conclusion, the Court directs Plaintiff and LPCS Leister to review and produce the records that are subject to discovery in accordance with this Opinion & Order, and provide Defendants with a privilege log relating to documents withheld by February 3, 2021. Plaintiff and LPCS Leister shall redact any personal identifying information from the documents, including birth dates, credit card information, home addresses and social security numbers. Should Defendants have any further objections to the privilege designations set forth in the privilege logs, they may seek further intervention from the Court.

In accordance with HIPAA, the records produced pursuant to this Opinion & Order shall not be disclosed to the public. *See Tavares*, 2012 WL 4321961, at *11. Furthermore, the Court hereby orders that these records may only be used for purposes of this pending litigation, and Defendants shall promptly destroy or return the records to Plaintiff or their original custodian upon the conclusion of all proceedings in this case. These records shall be protected by the parties' current Stipulated Confidentiality Agreement and Protective Order. (Docket No. 33). If

the parties believe that further protections are necessary, they may submit a proposed stipulated amended protective order consistent with this Opinion & Order for the Court's review.

The Clerk is respectfully requested to terminate the pending motion. (Docket No. 46).

Dated: January 20, 2021
       White Plains, New York

**SO ORDERED:**

_____
JUDITH C. McCARTHY
United States Magistrate Judge